# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DERRICK ALLEN**

**CIVIL ACTION**

**VERSUS**

**NO: 13-503-JWD-SCR**

**JEH JOHNSON, SECRETARY,**
**U.S. DEPARTMENT OF**
**HOMELAND SECURITY, ET AL**

## ORDER

Before the Court is Defendants' Motion for Summary Judgment[1] filed by Jeh Johnson, Secretary of the Department of Homeland Security, and the Federal Emergency Management Agency, seeking an order from this Court granting summary judgment against Plaintiff Derrick Allen ("Allen"), with prejudice, pursuant to Federal Rule of Civil Procedure ("Rule") 56. Plaintiff opposes that motion.[2] Following a status conference in which this Motion was discussed, Plaintiff was given an opportunity to supplement his Opposition and did so on November 17, 2014.[3] Defendant filed a Reply Memorandum on December 15, 2014.[4]

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1331.

## I. Background

### A. Plaintiff's Claims

Plaintiff filed this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), alleging claims of retaliation, hostile work environment, and

---

[1] Doc. 90.

[2] Doc. 92.

[3] Doc. 103.

[4] Doc. 107.

disparate treatment.[5] Specifically, Plaintiff alleges that the Federal Emergency Management Agency ("FEMA") discriminated and retaliated against him when it fired[6] him from a position as a local hire.

Plaintiff was hired by FEMA in December 2005 and began working in the Community Relations Department assisting Hurricane Katrina victims.[7] In April of 2006, Plaintiff transferred from the Community Relations Department to the Public Assistance Department.[8]

Plaintiff alleges that, following his transfer, he was told he had not followed the proper procedure to be transferred to the Public Assistance Department.[9] Plaintiff alleges he was labeled as a "troublemaker" because he, unknowingly, did not follow the proper transfer procedure.[10] Plaintiff contends that because of this label, he was prevented from applying for CORE positions and that he was assigned to work in deplorable conditions.[11]

In November of 2007, Plaintiff participated in an alternative dispute resolution session in which he complained about the agency's hiring practices.[12] The record reveals that he complained to Ms. Tonda Scott about FEMA's hiring practices,[13] but the record is not clear as to the details of

---

[5]Plaintiff's Complaint (Doc. 3); Plaintiff's Opposition (Doc. 92, p. 3).

[6]The circumstances surrounding Plaintiff's termination are in dispute. Plaintiff claims he was fired in retaliation for engaging in protected EEOC activity. (Doc. 3, p. 6.) FEMA alleges Plaintiff was not fired, but was not "re-hired" at the end of his contract, along with several other local hires. (Doc. 90-1, p. 8.)

[7]Doc. 92, p. 1.

[8]Doc. 92, p. 1-2.

[9]Doc. 92, p. 2.

[10]Doc. 90-2, p. 7.

[11]Doc. 90-2, p. 38.

[12]Doc. 3, p. 6.

[13]Doc. 3, p. 9.

Plaintiff's complaints in these sessions or when they took place in relation to the retaliation Plaintiff

claims occurred. Plaintiff does not allege that his complaints about FEMA's hiring practices were

based on race, color, religion, sex or national origin, the protected classes set forth in 42 U.S.C.A.

§ 2000e-2(a)).[14]

     Plaintiff complains of the following seven issues:

1.     On November 28, 2007, the Director of the IA Department (Rafael Roman) sent an email to his subordinate managers in order to employ Disaster Assistance Employees (DAE's) rather than local hires without following federal laws and agency protocol;[15]

2.     On December 1, 2007, Juan Parker was reprimanded for finding Mr. Roman's email on the fax machine and providing it to "dog pound" members, who were reprimanded by being separated into single groups;[16]

3.     Between November 20 to December 15, 2007, IA managers separated and labeled Plaintiff as a member of the Dog Pound, then isolated the Dog Pound members into a department and gave them bottom of the barrel jobs;[17]

4.     On March 27, 2008, a DHS/FEMA EEO spreadsheet that contained personally identifiable information was released to DHS/FEMA employees regarding Plaintiff's EEO activity;[18]

5.     On May 14, 2008, Plaintiff's supervisor was instructed by upper management to instruct Plaintiff to clean an infested trailer after sending out an email that asked employees not to go into trailers until they had been reported and looked at by management;[19]

6.     The agency improperly hired Darrell Edmonds as an ADR representative prior to the closing date for vacancy announcement KAT-08-LATRO-2803-LDC, for the position of Alternative

---

[14]Doc. 90-2, p. 41-42. Although Plaintiff mentioned in his deposition that he believed the assignments were racially motivated (Doc. 90-2, p. 41-44), he has not alleged racial discrimination in his Complaint (Doc. 3) or his Amended Complaint (Doc. 26). This distinction is discussed in detail below.

[15]Doc. 26, p. 1.

[16]Doc. 26, p. 2.

[17]Doc., 26, p. 2.

[18]Doc. 26, p. 2.

[19]Doc. 26, p. 2.

Dispute Resolution (ADR) Advisor. Plaintiff alleges the early closing of this vacancy announcement prevented an equal opportunity for the him to apply for this position;[20]

7.      As of July 3, 2008, Plaintiff was not offered a CORE position (for announcement numbers KAT-08-TRP-0018-LN, KAT-08-TRO—12-LN, KAT-08-TRO-0020-LN, KAT-08-TRO-0017-LN, and KAT-08-TRO-7001-JAZ) and was terminated on July 3, 2008.[21]

*B. Procedural History*

This case was originally brought by Plaintiff in the United States District Court for the Eastern District of Louisiana.[22] Judge Ivan L.R. Lemelle and Magistrate Judge Karen Wells Roby were originally assigned to this matter.[23] On March 24, 2011, the case was reassigned from Magistrate Judge Roby to Magistrate Judge Daniel E. Knowles, III.[24] In October of 2011, the parties consented to trial of the case before Magistrate Judge Knowles.[25] On March 19, 2012, Magistrate Judge Knowles dismissed Plaintiff's action "without prejudice to afford Allen the opportunity to choose the most appropriate forum in which to litigate his claim."[26]

Plaintiff filed a Motion for New Trial and Motion for Reconsideration of Magistrate Judge Knowles' judgment.[27] Magistrate Judge Knowles denied Plaintiff's Motion on June 6, 2012.[28]

---

[20]Doc. 26, p. 2.

[21]Doc. 26, p. 3.

[22]Doc. 3.

[23]Doc. 3.

[24]Doc. 6.

[25]Doc. 23.

[26]Docs. 42, 43.

[27]Doc. 45.

[28]Doc. 48.

Plaintiff appealed this decision.[29] The United States Court of Appeals for the Fifth Circuit reversed and remanded the case, finding that the then-Defendants waived their objection to venue by failing to raise the objection in their answer.[30] The Fifth Circuit stated, "[b]ecause a party may seek a §1404(a) transfer of venue after filing its first responsive pleading, and the defendants did so below, we reverse and remand for consideration of whether the case should be transferred."[31]

On remand, Plaintiff filed a Motion for Leave to File an Amended Complaint/Motion to Add Unaddressed Issues.[32] Defendants renewed their Motion to Transfer Case for *Forum Non Conveniens*.[33] Oral argument was held on both motions on June 26, 2013.[34] Magistrate Judge Knowles granted Defendants' Motion to Transfer for *Forum Non Conveniens* and dismissed without prejudice Plaintiff's Motion to Add Unaddressed Issues "for the transferee court to resolve."[35]

This matter was transferred to the United States District Court for the Middle District of Louisiana and assigned to Judge Shelly D. Dick and Magistrate Judge Stephen C. Riedlinger.[36] On August 16, 2013, Magistrate Judge Riedlinger denied Plaintiff's Motion for Leave to File an Amended Complaint/Motion to Add Unaddressed Issues.[37] Magistrate Judge Riedlinger held that

---

[29]Doc. 50.

[30]Doc. 51.

[31]Doc. 51.

[32]Doc. 55.

[33]Doc. 57.

[34]Doc. 62.

[35]Doc. 62.

[36]Doc. 64.

[37]Doc. 67, denying Doc. 55.

Plaintiff had failed to exhaust his administrative remedies before the EEOC on five claims arising from vacancy notices KAT-08-TRO-0012-LN, KAT-08-TRO-0017-LN, KAT-08-TRO-0018-LN, KAT-08-TRO-0020-LN, and KAT-08-TRO-7001-JAZ, and because of Plaintiff's failure to exhaust his administrative remedies, these claims were not properly before the court.[38]

Following Magistrate Judge Riedlinger's ruling, Plaintiff again appealed Magistrate Judge Knowles' decision to transfer the case to the Middle District of Louisiana.[39] The Fifth Circuit dismissed the appeal, holding that the transfer of a civil action to another district court pursuant to § 1404 is interlocutory in nature and not appealable prior to the entry of a final judgment, and that an order denying leave to amend the complaint is also not final or otherwise appealable.[40]

On June 13, 2014, Defendants filed a Motion to Dismiss based upon 42 U.S.C. § 2000(e)-16(c)'s provision that in an action brought under Title VII, the only proper defendant is the head of the federal agency in his or her official capacity.[41]On August 13, 2014, this matter was reassigned to the undersigned.[42] Defendants' Motion to Dismiss was granted as to all Defendants except the agency head, Jeh Johnson.[43]

On June 13, 2014, then-Defendants also filed a Motion for Summary Judgment which the Court now addresses.[44] A status conference was held on September 18, 2014 at which time Plaintiff

---

[38]Doc. 67.

[39]Doc. 73.

[40]Doc. 81.

[41]Doc. 89-1, p. 4.

[42]Doc. 94.

[43]Doc. 100.

[44]Doc. 90.

was ordered to file supplemental briefing regarding the present Motion.[45] Following the filing of

Plaintiff's Supplemental Response,[46] Defendant filed a Motion for Leave to File Reply Brief, which

was granted.[47] Defendant's Reply was filed on December 15, 2014.[48]

## II.    Arguments of Parties

In the instant Motion, Defendant argues that: (1) Plaintiff failed to exhaust his administrative

remedies for most claims including, among others, his non-selection for five Louisiana job vacancies

which resulted in the expiration of his appointment with FEMA;[49] (2) Plaintiff cannot prove that he

suffered retaliation for engaging in protected activity in the form of increased work scrutiny;[50] and

(3) Plaintiff cannot prove that he suffered retaliation for engaging in protected activity based on his

assignment to clean out an infested trailer, which he ultimately refused to do.[51] Defendant points out

that during the EEOC complaint process, Plaintiff did not allege that any of his EEOC complaints

arose from his inclusion in a class protected by Title VII, and therefore his participation in making

these complaints cannot form the basis of a claim of retaliation under Title VII.[52]

In his Opposition, Plaintiff lists several witnesses who he contends will provide testimony

---

[45]Doc. 102.

[46]Doc. 103.

[47]Doc. 104, granted in Doc. 105.

[48]Doc. 107.

[49]Doc. 90-1, p. 1.

[50]Doc. 90-1, p. 1.

[51]Doc. 90-1, p. 1-2.

[52]Doc. 90-1, p. 26.

contrary to Defendants' assertions.[53] Plaintiff has attached to his Supplemental Opposition sworn

answers of his former co-worker, Malcom Summers, to questions apparently provided by Plaintiff.[54]

Mr. Summers, in his sworn answers, states that he recalls Plaintiff's EEOC complaints, but does not

state that these complaints are based on any discrimination due to Plaintiff's inclusion in a protected

class.[55]

## III. Standard of Review

Summary judgment shall be granted when there are no genuine issues of material facts and

the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex v. Carrett*,

477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" if proof of its

existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.

*See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).

A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder

could render a verdict for the nonmoving party. *Id*. at 248-49, 106 S.Ct. 2505. In order to grant a

motion for summary judgment, the Court must be satisfied "that the evidence favoring the

nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."

*Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson*,

477 U.S. at 249, 106 S. Ct. 2505).

The moving party bears the burden of establishing that there are no genuine issues of

material fact. *Celotex,* 477 U.S. at 324, 106 S. Ct. 2548. However, if the dispositive issues is one on

---

[53]Doc. 92, p. 8.

[54]Doc. 103-1.

[55]Doc. 103-1.

which the nonmoving party will bear the burden of proof at trial, the nonmoving party may satisfy the burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the non-moving party's claim. *Id*. at 325, 106 S. Ct. 2548; *Lavaspere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referencing evidence, set out specific facts showing that the genuine issue exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *Id*. at 325, 106 S. Ct. 2548; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).

In an employment discrimination case, the Court must "focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 447-48 (5th Cir. 1996). The Court "must draw all reasonable inferences in favor of the non-moving party, and [the Court] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L.Ed. 2d 105 (2000).

However, the non-movant's burden in a summary judgment motion is not satisfied by conclusory allegations, unsubstantiated assertions, or by a mere scintilla of evidence. *Liquid Air Corp.*, 37 F.3d at 1075. Instead, "[t]he non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation marks omitted). If the non-moving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986).

Summary judgment may be improper, even though the basic facts are undisputed, if the

ultimate facts in question are to be inferred from them, and the parties disagree regarding the permissible inferences that can be drawn from the basic facts. *Winters v. Highlands*, 569 F.2d 297, 299 (5ᵗʰ Cir. 1978). "'[T]he choice between permissible inferences is for the trier of facts.'" *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5ᵗʰ Cir. 1978), quoting, *Walker v. U.S. Gypsum Co.*, 270 F.2d 857, 862 (5ᵗʰ Cir. 1959), cert. denied, 363 U.S. 805, 80 S.Ct. 1240, 4 L.Ed.2d 1148 (1960). Where a jury is called for, the litigants are entitled to have the jury choose between conflicting inferences from basic facts. *Nunez*, 572 F.2d at 1124.

## IV.    Analysis

### A.    Failure to Exhaust Administrative Remedies

Defendant first argues that Plaintiff has failed to exhaust her administrative remedies with respect to issues two, three, four, six and seven, as listed above.[56]

Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c) permits most federal employees to seek relief from proscribed discriminatory employment practices in Federal District Court. As a precondition to seeking this judicial relief, however, complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency. *Pacheco v. Mineta*, 448 F.3d 783 (5ᵗʰ Cir. 2006).

The Fifth Circuit explained the Title VII exhaustion requirement:

> The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, "[a] less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue

---

[56]Doc. 90-1, p. 21-22.

will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." With that balance in mind, this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.

*Id.* at 788-789 (internal citations omitted.)

As this Court explained:

The Fifth Circuit went on to say [in *Pacheco*] that it does "not require that a Title VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency." Nor does it "require, for purposes of exhaustion, that a plaintiff allege a prima facie case before the EEOC." "Instead, the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger."

*Jeavons*, 2014 WL 897425, slip op. at *2 (quoting *Pacheco*, 448 F.3d at 788-789). The inquiry then turns to whether Plaintiff exhausted his administrative remedies for each of the seven issues listed in his Complaint[57] and Amended Complaint.[58]

Defendant admits that Plaintiff exhausted his administrative remedies with respect to Issues 1 and 5 of Plaintiff's Amended Complaint.[59] Issues 1 and 5 are properly before this Court.

Defendant argues that Plaintiff failed to exhaust his administrative remedies as to Issues 2, 3, 4, 6, and 7.[60] Plaintiff admits in his Motion to Add Unaddressed Issues/Motion to Amend Complaint that this Issues 2, 3, 4, 6 and 7 were not accepted or addressed by the agency or the

---

[57]Doc. 3.

[58]Doc. 26.

[59]Doc. 90-1, p. 21, citing Doc. 36, p. 1-2.

[60]Doc. 90-1, p. 22-24.

EEOC Administrative Judge.[61] Magistrate Judge Riedlinger denied Plaintiff's Motion to Add Unaddressed Issues/Motion to Amend Complaint.[62] These claims were not then and are not now properly before the Court. Thus, the Court's analysis proceeds only with respect to Issues 1 and 5.

B.    Racial Discrimination

Plaintiff does not allege racial discrimination in his Complaint[63] or in his Amended Complaint.[64] Rather, Plaintiff's only complaint of discrimination based on race is contained within his deposition.[65] As this is not the proper procedure for bringing a complaint of racial discrimination, this issue is not properly before the Court.[66] Assuming *arguendo* that Plaintiff's claim of racial discrimination was properly before the Court, Plaintiff would not meet his burden of proof in this regard.

In order to succeed, a plaintiff must prove a *prima facie* case of discrimination under Title VII by showing that: (1) he was a member of a protected class, (2) he was qualified for the employment position at issue, (3) he suffered an adverse employment action, and (4) he was treated less favorably than similarly situated employees outside of his protected group. *Lee v. Kansas City Souther Ry. Co.*, 574 F.3d 253 (5th Cir. 2009).

It is undisputed that Plaintiff, an African American, is a member of a protected class.

---

[61]Doc. 55, p. 2-3.

[62]Doc. 67, denying Doc. 55.

[63]Doc. 3.

[64]Doc. 26.

[65]Doc. 90-2, p. 41-42.

[66] While Fed. R. Civ. Proc. 8 does not require an exhaustive listing of Plaintiff's claims, it does require "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. It is insufficient for Plaintiff to raise a racial discrimination claim in his deposition, which was taken three years after Plaintiff first filed suit.

However, Plaintiff has not provided any evidence to show that he was qualified for the positions for which he applied. Although Plaintiff alleges the actions listed above were adverse employment actions, they were not, as discussed in detail below. Plaintiff also fails to present evidence to show that he was treated less favorably than similarly situated employees outside of his protected group.

Further, although Plaintiff belongs to a protected class, Plaintiff has failed to provide evidence upon which a jury could find that the actions of which he complains were based on his inclusion in this class. Plaintiff admitted that his EEOC complaints, and the treatment on which these complaints were made, were not based on his race or color.[67] In Plaintiff's deposition, he stated,

> A: In the way that we wasn't allowed to participate in the in-house hiring, and we at this point was being placed in harsh working conditions.
>
> Q: And that was based on the fact that you were known as a trouble maker?
>
> A: That was one fact.
>
> Q: What was the other fact?
>
> A: And the other fact, I believe, it had the undertone of race issue.
>
> Q: And what was that based on?
>
> A: Me being black.
>
> Q: Right. What was your belief based on; was it solely because you were black that you believed that?
>
> A: No. Just the way we were talked to.
>
> Q: Did anyone ever use racial ephithets with you?
>
> A: Not clearly.
>
> Q: Okay. So give me an example of what you would say is something that's not clear, but shows an intent to discriminate. And, by that, I mean that somebody said to you.

---

[67]Doc. 90-2p. 41-42.

A:      Y'all, y'all always causing trouble.

Q:      So the reference of the word "y'all"?

A:      Yeah. Y'all are always causing trouble.

Q:      Who said that?

A:      Supervisors.

Q:      And you believed he said that because you were black?

A:      Yeah. I didn't know who was y'all. What do you mean by "y'all"? My name is Derrick. His name William.[68]

In South Louisiana, the use of the word "y'all" is commonplace, and is not discriminatory or derogatory. Plaintiff has admitted that no racial epithets were used by his supervisors.[69] Plaintiff has failed to point to any similarly situated employee outside of his protected group who was treated more favorably or who was never included in group that was referred to as "y'all." Plaintiff has failed to show conduct which rises to the level of discrimination based on race.

C.      Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in an activity that Title VII protects; (2) that an adverse employment action occurred; and (3) a causal connection exists between the protected activity and the adverse employment action. *Davis v. Fort Bend County*, 765 F.3d 480, 489-490 (5ᵗʰ Cir. 2014), citing *Ikossi-Anastiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 551 (5ᵗʰ Cir. 2009).

1.      Protected Activity

Plaintiff alleges three incidents which could be considered "protected activity": (1) in May

---

[68] Doc. 90-2, p. 41-42.

[69] Doc. 90-2, p. 41.

or June 2006 when he spoke to an ERO officer, after which he did not file a formal administrative complaint;[70] (2) in November 2007 when he participated in an ADR session;[71] and (3) in February 2008 when he filed a formal administrative complaint of retaliation following informal counseling which began on November 30, 2007.[72] Defendant argues that this does not constitute protected activity because Plaintiff did not oppose an unlawful practice under Title VII.[73]

42 U.S.C.A. § 2000e-3 prohibits discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. This section states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for each membership, because he has opposed any practice made an unlawful employment practice by this sub-chapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this sub-chapter.

An employee has engaged in activity protected by Title VII, for purposes of retaliation claim, if he or she has either opposed any practice made unlawful employment practice by Title VII or made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under Title VII. "Any practice made an unlawful employment practice by Title VII" includes: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner of an investigation, proceeding

---

[70]Doc. 90-2, p. 38, 44-45.

[71]Doc. 90-2, p. 77-78.

[72]Doc. 3, p. 5.

[73]Doc. 90-1, p. 26.

or hearing. *Rodriguez v. Wal-Mart Stores, Inc.*, 540 Fed. Appx. 322 (5th Cir. 2001). While opposition to discrimination need not be in formal written form, **internal complaints must reference discrimination or other unlawful employment activity in order to be protected**. *Id.* (emphasis added).

In Plaintiff's Complaint,[74] Amended Complaint[75] and all other pleadings, Plaintiff does not allege that he complained of racial discrimination during the instance in May or June 2006 when Plaintiff spoke to an ERO officer, after which he did not file a formal administrative complaint;[76] the instance in November 2007 when he participated in an ADR session;[77] or during the informal counseling which began on November 30, 2007 and resulted in a formal administrative complaint filed in February of 2008.[78] The only allegation that Plaintiff makes to show that any of these meetings involved complaints of race is contained within his deposition:

> Q:     Okay. So when you went to Gloria Cates to complain that you had been treated unfairly, did you raise–what did you raise with her about the reasons for the unfair treatment?
>
> A:     Because of the fact that we were troublemakers and had a racial undertone. That was the –that was the issue.
>
> Q:     And did you explain to her the exact statement of the racial undertones?
>
> A:     Pretty much.[79]

---

[74]Doc. 3.

[75]Doc. 26.

[76]Doc. 90-2, p. 38, 44-45.

[77]Doc. 90-2, p. 77-78.

[78]Doc. 3, p. 5.

[79]Doc. 90-2, p. 44.

This is the only place in the record in which Plaintiff alleges that the complaints he made during the activity he claims was protected were based on race. Plaintiff offers no further support that he made complaints of racial discrimination during these meetings. As explained above, the "racial undertones" of which Plaintiff spoke included only the use of the word "y'all" to refer to a group of workers, an incident which does not rise to the level of racial discrimination.[80] Further, Plaintiff filed the Statement of Mr. Malcom Summers, who was with him when he engaged in the activities he claims were protected.[81] Mr. Summers does not substantiate Plaintiff's claims that his complaints were based on race.[82]

Under the standards set by the Fifth Circuit, Plaintiff has failed to establish that he engaged in a protected activity. In each of the instances above, Plaintiff did not oppose a practice made an unlawful employment practice by Title VII, nor does he claim that he was making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing under Title VII. Because Plaintiff cannot show that he engaged in protected activity, Plaintiff cannot meet his burden of establishing a *prima facie* case of retaliation.

2.    Adverse Employment Action

Assuming *arguendo* that Plaintiff had engaged in a protected activity, Plaintiff would next need to prove that he suffered an adverse employment action. *Davis,* 765 F.3d at 489-490. To reach this burden of proof, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a

---

[80]Doc. 90-2, p. 41-42.

[81]Doc. 103-1, p. 1-3.

[82]Doc. 103-1, p. 1-3.

reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54; 126 S. Ct. 2405, 2407 (2006).

In *Burlington*, the Supreme Court explained that "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id*. at 67. Title VII "does not set forth a general civility code for the American workplace," and "petty slights, minor annoyances, and simple lack of good manners" are not actionable retaliatory conduct under its provisions. *Id*. at 68. The Supreme Court noted that the significance given any act of retaliation will often depend on the particular circumstances. *Id*. at 69. "Context matters." *Id*. The Court then gave the following example:

> A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a non-actionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.

> *Id*.

The burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), is applicable to Title VII unlawful retaliation cases. *McMillan v. Rust College, Inc.*, 710 F. 2d 1112 (5th Cir. 1983). Once the Plaintiff establishes a *prima facie case,* the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id*. If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. *McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007).

It is within this framework that the Court examines the two issues remaining before it.

Plaintiff's Issue No. 1: On November 28, 2007, the Director of the IA Department (Rafael Roman) sent an email to his subordinate managers in order to employ Disaster Assistance Employees (DAE's) rather than local hires without following federal laws and agency protocol.[83]

Plaintiff alleges he was retaliated against on November 28, 2007, when the Director of the IA Department (Rafael Roman) sent an email to his subordinate managers in order to employ Disaster Assistance Employees (DAE's) rather than local hires without following federal laws and agency protocol.[84] In support, Plaintiff attaches the email of Mr. Roman, which states, in pertinent part:

> All–I expect that the next pushback will come from a politicized coalition of local hires who will challenge the decision for hiring DAE's as opposed to hiring COREs. I feel confident that our DAE teams are generally more productive than our Local Hire teams. After all, Local Hires have a vested interest in the housing program's survival and not its conclusion. However, I need statistics to prove this. Therefore, for a period of two weeks or month I want specific DAE teams segregated from Local Hire teams and their productivity measured. Brian, can you craft this, so that our QC-DAE can measure production of let's say 3 or 4 recent teams, field inspection teams, case worker teams, etc.?[85]

Plaintiff has not argued or offered any evidence to show that a reasonable employee would have found this email, its contents, or its instructions materially adverse, such that it would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington*, 548 U.S. at 54. Assuming *arguendo* that he had, the burden would then shift to the Defendant to produce a legitimate, non-disrciminatory reason for his actions. *Turner*, 476 F.3d at 345.

---

[83]Doc. 26, p. 1.

[84]Doc. 26, p. 1.

[85]Doc. 92-1, p. 15.

Defendant argues that this email and the study proposed were part of an audit FEMA was undergoing assessing its effectiveness in providing relief and assistance to disaster victims.[86] To support this position, Defendant produced a Declaration by Mr. Roman which states that he had previously received data indicating that DAE teams were more efficient than the local hire teams in completing recovery work.[87] Mr. Roman states that he asked for information requested in the November 27, 2007 email to "allow [him] to objectively benchmark in the form of a qualitative comparison of several different teams, including recertification teams, field inspection teams, case worker teams, and others for a period of two weeks to a month" as a part of the agency audit.[88]

Under *McDonnel Douglas*, 411 U.S. 792, the burden shifts back to the Plaintiff to show that Defendant's reason is merely pretextual. Plaintiff has offered no evidence to rebut Defendant's non-discriminatory reason for its conduct. Therefore, as to Issue Number 1, Plaintiff has failed to prove that he suffered an adverse employment action.

Plaintiff's Issue No. 5: On May 14, 2008, Plaintiff's supervisor was instructed by upper management to instruct Plaintiff to clean an infested trailer after sending out an email that asked employees not to go into trailers until they had been reported and looked at by management.[89]

Plaintiff alleges that on May 14, 2008, as retaliation for his engagement in what he alleged was protected EEOC activity, Plaintiff's supervisor was instructed by upper management to instruct Plaintiff to clean a trailer that was infested with bugs.[90] Plaintiff alleges this occurred after his

---

[86]Doc. 90-3, p. 2.

[87]Doc. 90-3, p. 3.

[88]Doc. 90-3, p. 3.

[89]Doc. 26, p. 2.

[90]Doc. 26, p. 2.

supervisors had sent out an email that stated a new policy requiring employees not to go into infested trailers until the infestation had been reported and looked at by management.[91]

Plaintiff has not argued or offered any evidence to show that a reasonable employee would have found a single assignment to clean out an infested trailer materially adverse, such that it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 54. Assuming *arguendo* that he had, the burden would then shift to the Defendant to produce a legitimate, non-disrciminatory reason for his actions. *Turner*, 476 F.3d at 345.

Defendant alleges that the assignment to clean or clear out a trailer was made for the non-discriminatory purpose of protecting the hurricane victims who occupied the trailer from further loss of property, protecting the agency from fraudulent claims of loss of valuable items, and reassignment of FEMA trailers to new disaster victims.[92] In support of its non-discriminatory reason for assigning Plaintiff to this task, Defendant has produced the Declaration of Nora Huete, the then-Direct Housing Operations Group Supervisor.[93] Ms. Huete states that when a disaster victim moved out of a FEMA-owned trailer,  field inspectors, such as Plaintiff, were tasked with removing the tenant's personal property, inventorying, and storing or disposing of the property for the purpose of leaving the trailer clean and ready to re-use if necessary.[94]

Under *McDonnel Douglas*, 411 U.S. 792, the burden shifts back to the Plaintiff to show that Defendant's reason is merely pretextual. Plaintiff has offered no evidence to rebut Defendant's non-

---

[91]Doc. 26, p. 2.

[92]Doc. 90, p. 30.

[93]Doc. 90-4.

[94]Doc. 90-4, p. 2.

discriminatory reason for its conduct. Therefore, as to Issue Number 5, Plaintiff has failed to prove that he suffered an adverse employment action.

Plaintiff has not met his burden of proving that he suffered any adverse employment action as a result of his EEOC complaints. Because Plaintiff cannot show that suffered an adverse employment action, Plaintiff cannot meet his burden of establishing a *prima facie* case of retaliation.

3.    Causal Connection

Even assuming *arguendo* that Plaintiff established that he engaged in Title VII protected activity, which resulted in adverse employment action, Plaintiff has failed to meet his burden of proof because he has not offered any evidence which could establish a causal nexus between the protected activity in which he engaged and he actions of which he complains.

In order to recover, a plaintiff must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *University of Texas Southwestern Medical Center v. Nassar,* — U.S. —, 133 S. Ct. 2517, 2532-33, 186 L.Ed. 2d 503 (2013). See also *Finnie v. Lee County, Miss.,* 541 Fed. Appx. 368, 371-72, 2013 WL 4852244, *2 (5th Cir. 2013). ("To meet the third prong [of a prima facie case], *Nassar* requires that Finnie provide sufficient evidence to allow a reasonable juror to conclude that her filing of an EEOC claim was the "but-for" cause of her termination, and that, had she not filed the claim, she would have remained in her position at the Lee County Detention Center.")

Plaintiff's Issue No. 1: On November 28, 2007, the Director of the IA Department (Rafael Roman) sent an email to his subordinate managers in order to employ Disaster Assistance Employees (DAE's) rather than local hires without following federal laws and agency protocol.[95]

---

[95]Doc. 26, p. 1.

As stated above, Plaintiff alleges he was retaliated against on November 28, 2007, when the Director of the IA Department (Rafael Roman) sent an email to his subordinate managers in order to employ Disaster Assistance Employees (DAE's) rather than local hires without following federal laws and agency protocol.[96] Assuming *arguendo* that Plaintiff had met the other elements of his burden of proof, Plaintiff must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *Nassar,* 133 S. Ct. at 2532-2533. In other words, Plaintiff must prove that "but-for" his filing of an EEOC claim, Mr. Roman would not have sent the email instructing his subordinate managers to monitor and gather data regarding the performance of Disaster Assistance Employees and Local Hires. *Finnie,* 541 Fed. Appx. at 371-372.

Plaintiff has not offered any evidence to support his allegation that Mr. Roman's email would not have been sent or that the instructions contained therein would not have been made but-for his filing of an EEOC claim. Defendant has provided the Declaration of Mr. Roman, who states that he has no personal recollection of Mr. Allen, who would have been several levels removed from him in the managerial chain.[97] Mr. Roman further states that he was not aware of any EEO activity or participation in ADR on Plaintiff's part at the time his email was sent.[98] Plaintiff has not offered any evidence to refute Mr. Roman's Declaration.

Plaintiff has failed to establish a causal connection as to Issue Number 1.

Plaintiff's Issue No. 5: On May 14, 2008, Plaintiff's supervisor was instructed by upper management to instruct Plaintiff to clean an infested trailer after sending out an email that

---

[96]Doc. 26, p. 1.

[97] Doc. 90-3, p. 2.

[98]Doc. 90-3, p. 2.

<u>asked employees not to go into trailers until they had been reported and looked at by management.[99]</u>

As discussed above, Plaintiff alleges that on May 14, 2008, in retaliation for his engagement in what he alleged was protected EEOC activity, Plaintiff's supervisor was instructed by upper management to instruct Plaintiff to clean an trailer that was infested with bugs.[100] Plaintiff alleges this occurred after his supervisors had sent out an email stating a new policy requiring that employees not to go into infested trailers until they had been reported and looked at by management.[101] Assuming *arguendo* that Plaintiff had met the other elements of his burden of proof, Plaintiff must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of his employer. *Nassar,* 133 S. Ct. at 2532-2533. In other words, Plaintiff must prove that "but-for" his filing of an EEOC claim, he would not have been assigned to clean out the infested trailer. *Finnie,* 541 Fed. Appx. at 371-372.

It is undisputed that clearing trailers of the property of former tenants and preparing trailers for re-use was a part of Plaintiff's job description and was an assignment in which he regularly engaged.[102] Plaintiff states in his deposition that he was assigned to clean out the infested trailer in question on May 14, 2008 in violation of a policy requiring managers to inspect any infested trailers prior to assigning an employee to clean and clear the trailers.[103, 104] The email sent by Ms. Huete

---

[99]Doc. 26, p. 2.

[100]Doc. 26, p. 2.

[101]Doc. 26, p. 2.

[102]Doc. 90-2, p. 72.

[103] Doc. 90-2, p. 75.

[104]Plaintiff has offered no evidence to show that his supervisors knew the trailer to which he was assigned was infested with bugs at the time the assignment was made.

instituting a new policy requiring management to inspect an infested trailer prior to sending an employee to inventory and store or dispose of its contents was not sent until May 16, 2008, two days after Plaintiff was assigned to clean out the infested trailer.[105] Because the new policy was not created until 2 days after Plaintiff was assigned to clean out the infested trailer, Plaintiff's argument that his EEOC complaints were the cause of his supervisor's assigning him to complete this task in violation of this policy fails.

Plaintiff has failed to provide any evidence upon which a fact finder could determine that the actions complained of in Issue Number 5 would not have occurred in the absence of the alleged wrongful action or actions of his employer. Plaintiff likewise has not provided sufficient evidence to allow a reasonable juror to conclude that had he not participated in the activities he claims were protected EEOC activities, he would not have been assigned to clean out this particular trailer. Plaintiff has failed to establish a causal connection between his engagement in allegedly protected EEOC activity and the adverse employment actions he claims he experienced.

## V.    Conclusion

Plaintiff has not properly alleged a cause of action for racial discrimination. Assuming *arguendo* that he had, in order to succeed, it was necessary for Plaintiff to prove a *prima facie* case of discrimination under Title VII by showing that: (1) he was a member of a protected class, (2) he was qualified for the employment position at issue, (3) he suffered an adverse employment action, and (4) he was treated less favorably than similarly situated employees outside of his protected group. Civil Rights Act of 1964, § 701, et seq. Plaintiff has failed to meet this burden.

Plaintiff has also alleged a cause of action for retaliation. To establish a *prima facie* case of

_____

[105]Doc. 90-2, p. 89.

retaliation, it was necessary for Plaintiff to show that: (1) he engaged in an activity that Title VII protects; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Rodriquez v. Wal-Mart Stores, Inc.*, 540 Fed. Appx. 322 (5th Cir. 2001). Plaintiff has failed to point to evidence sufficient to establish the elements of a *prima facie* case for retaliation. Accordingly, summary judgment is appropriate on Plaintiff's retaliation claim.

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment (Doc. 90) is GRANTED, and Plaintiff's claims are dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on December 19, 2014.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**